Olayinka ONABIYI, Ademola M. Oduyebo, Mohammed Akram, Mahamed S. Kamara, Mohammad Azam, Petitioners,

v.

DISTRICT OF COLUMBIA TAXICAB COMMISSION, Respondent.

Nos. 87–1322 to 87–1324, 87–1400 and 87–1424.

District of Columbia Court of Appeals.

Argued April 13, 1989.

Decided May 12, 1989.

Edward F. Kearney, Washington, D.C., for petitioners.

Charlotte M. Brookins, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Washington, D.C., Deputy Corp. Counsel, were on the brief, for respondent.

Before NEWMAN, TERRY, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

The District of Columbia Taxicab Commission (DCTC) found that each of the petitioners had operated a taxicab in the District of Columbia without a hacker's license, in violation of D.C.Code § 40–1719(a) (1986 Repl.), and imposed civil fines. Petitioners contend that the offenses should have been brought before the Bureau of Traffic Adjudication (BTA), and that the DCTC was without jurisdiction. We affirm.

I

Section 40–1719(a) provides in pertinent part that no person may operate a taxicab within the District without first procuring all applicable licenses required by the DCTC. The statute was enacted in 1986 as

part of the District of Columbia Taxicab Commission Establishment Act, D.C.Code §§ 40–1701 *et seq.* (the Act).

In the findings with which the Act begins, the Council stated that "[g]overnmental regulation of the taxi industry in the District has been and is presently marked by a fragmented, decentralized, and uncoordinated system of regulation...." § 40–1701(3). The Council found that to correct this situation, "there should be established a central regulatory mechanism for the furtherance of coherent, efficient and enforceable regulation...." § 40–1701(4). To that end, the Council enacted § 40–1704, which provides that

[t]here is established the District of Columbia Taxicab Commission as a subordinate agency within the executive branch of the District government with exclusive authority for intrastate regulation of the taxicab industry as provided herein.

The Council further provided in § 40–1707(b)(2) that

The Commission's Panel on Adjudication shall have the jurisdiction, power, and duty to:

(A) Adjudicate all complaints lodged in the Office against taxicab operators, companies, associations, fleets, and taxi dispatch services by consumers and officials or employees of government involved in taxicab enforcement or administration....

We are of the opinion that the foregoing language is plain and unambiguous. The DCTC has exclusive authority for intrastate regulation of taxicabs. One of the ways in which it so regulates is to enforce § 40–1719, which prohibits hacking without a license. Moreover, the Council's statutory findings demonstrate a legislative intention to put an end to fragmented and decentralized enforcement, and thus to sustain the DCTC's jurisdiction over these complaints.

Although the plain legislative language would be sufficient, our conclusion that the DCTC has jurisdiction is buttressed both by the legislative history of the Act and by its administrative construction. The Report of the Committee on Public Services and Cable Television, which considered the proposed legislation, states in pertinent part that

The purpose of Bill 6–159, the "District of Columbia Taxicab Commission Establishment Act of 1985" is to effect a consolidation of the District's regulation of the taxicab industry in one agency of government. In effecting this purpose the bill proposes to abolish fragmented governmental authority over taxicabs and establishes a District of Columbia Taxicab Commission ("Commission") with full regulatory power over the industry.

Moreover, the Commission itself has construed the Act as authorizing it to assume jurisdiction over these complaints. As the Supreme Court explained in *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." [Citations omitted.] Particularly is this respect due when the administrative practice at stake involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.

*Accord, Winchester Van Buren Tenants Assn. v. Rental Housing Commission,* 550

A.2d 51, 55 (D.C.1988).[1]

## II

Petitioners argue primarily that the BTA has exclusive jurisdiction of "moving infractions." D.C.Code § 40-611 (1981) provides that all violations of statutes, regulations, executive orders or rules relating to the operation of motor vehicles shall be adjudicated by the BTA unless they fall within certain specific enumerated exceptions.[2] Since § 40-1719 (operation of a taxicab without a hacker's license) is not listed among these exceptions,[3] petitioners contend that the Council must have intended to leave the present complaints within the exclusive jurisdiction of the BTA.

We do not agree. As we recently stated in *Graham v. Bernstein*, 527 A.2d 736, 739 (D.C.1987), quoting from *Martin v. United States*, 283 A.2d 448, 450-51 (D.C.1971),

[t]his court has often recognized "the well-settled rule of statutory construction that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms."

This is particularly true where, as here, the more specific statute was enacted after the general one. *Graham, supra*, 527 A.2d at 738; *see also* 2A SUTHERLAND, STATUTORY CONSTRUCTION § 51.05 (4th ed. 1984), and authorities there cited. Given the language and stated purpose of the Taxicab Commission Act, we are satisfied that the DCTC, rather than the BTA, was intended to be the agency charged with enforcing laws prohibiting unlicensed hacking. Accordingly, each of the orders under review is hereby

*Affirmed.*

---

1. It appears from the record that the police initially attempted to file several of the tickets with the BTA, and that that agency declined to receive them and directed that they be forwarded to the DCTC. We thus have a somewhat informal assessment by the BTA that it no longer has jurisdiction, which in some modest measure also supports the conclusion we reach in this opinion.

2. Petitioners also contend that several of the complaints were not "lodged" with the DCTC as required by § 40-1707(b)(2) because they were initially delivered to the BTA and only received by the DCTC at a later time. We find this contention frivolous—the DCTC's exclusive jurisdiction was not intended to depend on where an officer first files a ticket or on where the ticketed person reports with it—and we discuss the issue no further.

3. *See* §§ 40-612, 613. Although it would have been—and may still be—provident for the Council to add hacking without a license to the enumerated exceptions to the "moving infractions" statute, we do not believe that its failure to do so can provide a basis for refusing to give effect to the obvious legislative intent in passing the Taxicab Act.