*No. 93–CV–1052 is hereby, dismissed as moot,*

*No. 94–AA–248 is hereby, reversed, and,*

*No. 94–AA–299 is hereby, dismissed as moot.*

**Stephen EDWARD, Petitioner,**

v.

**DISTRICT OF COLUMBIA TAXICAB COMMISSION, Respondent.**

**No. 93–AA–359.**

District of Columbia Court of Appeals.

Submitted May 12, 1994.

Decided Aug. 4, 1994.

---

Reginald F. Martin, Washington, DC, was on the brief, for petitioner.

John Payton, Corp. Counsel at the time the brief was filed, with whom Charles L. Reischel, Deputy Corp. Counsel, and Phillip A. Lattimore, III, Asst. Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before STEADMAN and KING, Associate Judges, and NEWMAN, Senior Judge.

KING, Associate Judge:

Steven Edward petitions for review of the District of Columbia Taxicab Commission's ("DCTC") revocation of his public vehicle license and the denial of his application for a taxicab operator license. He contends here, as he did at two different stages of the proceedings before DCTC, that the agency exceeded "its statutory authority" in imposing those sanctions.[1] Because the agency did not directly address that contention, we remand the case to DCTC.

I.

In the District of Columbia, every taxicab must have a valid public vehicle license[2] and every driver of a taxicab must have a valid taxicab operator license.[3] In August 1992, although Edward owned a taxicab and possessed a valid public vehicle license for that vehicle, he did not have a taxicab operator license.[4] A former passenger filed a complaint against the driver of the cab owned by Edward, alleging that on August 2, 1992, the driver had refused to transport him to his requested destination and had threatened him with a knife. In response to that complaint, the Office of Taxicabs directed Edward to appear and "show cause why your public vehicle license and/or operator license should not be suspended or revoked or a monetary fee imposed."

A hearing was held before DCTC's three-member Panel of Adjudication ("Panel") on October 21, 1992. At the hearing, Edward appeared, without counsel, and admitted that he had operated the taxicab on the date in question and had picked up the passenger

---

1. Edward also makes other claims that warrant only summary consideration. He asserts that the DCTC "effect[ed] its final order prematurely," did not afford him the "correct notice of appeal procedures," and denied him a "fundamentally fair" hearing because it "did [not] comport with the District of Columbia Administrative Procedures Act." These claims are without merit. Our review of the record persuades us that DCTC substantially complied with the requirements for providing Edward a fair hearing and that he was able to adequately exercise his appeal rights. *See Abolaji v. District of Columbia Taxicab Comm'n,* 609 A.2d 671, 672 (D.C.1992) (absent showing of substantial prejudice procedural defects, including notice errors, will not defeat the public's legitimate interest in protecting taxicab passengers) (citations omitted).

2. Each taxicab must have "[t]he vehicle identification card ... issued under § 31(d) of the License Act (D.C.Code § 47-2829(d) ...) ... dis-

played at all times." 31 DCMR § 814.1 (1990). In addition, 31 DCMR § 1000.2 (1990) provides that "[n]o owner of a public vehicle for hire shall operate or permit the vehicle to be operated in the District unless a license has been issued for that vehicle."

3. The rule provides:

No person shall drive or be in physical control of a taxicab unless they have in their possession a valid identification card issued to them under D.C.Code § 47-2829(e) (1987).

31 DCMR § 822.2 (1990). Similarly, D.C.Code § 47-2829(e)(1) (1990) provides that "[n]o person shall engage in driving or operating any [passenger vehicle for hire] ... without having procured ... a license."

4. The taxicab operator license is referred to as both an "identification card," 31 DCMR §§ 822.2, 899.1 (1990), and a "face," 31 DCMR § 899.1.

who had filed the complaint, but he denied the other allegations. The Panel, finding that Edward had operated his taxicab without a taxicab operator license on the date of the alleged incident in violation of 31 DCMR § 822.2,[5] ruled that Edward's "privilege to hold a DCTC [public vehicle] license for any DC licensed public vehicle, including the DCTC license for Hilltop Cab # 263[,] is revoked for five years." The Panel also revoked Edward's "privilege to operate a public vehicle for hire in the District of Columbia ... for a period of five years."[6]

Edward, represented by counsel, filed a motion seeking reconsideration of the penalties imposed, arguing that "by revoking [Edward's] privilege to drive for a period of five years, the Panel has gone way beyond the intent of the existing legislation ... [and] has abused its discretion." He also contended that a civil fine was the only sanction available to the Panel. The order denying that motion was silent concerning Edward's contention that the Panel exceeded its authority in imposing the sanctions it imposed. Edward then submitted a letter, seeking reconsideration by the Full Panel on Adjudication, claiming that a long-term suspension would mean financial hardship on his family. After that request was denied, Edward, represented by different counsel, in a motion for reconsideration, again contended that "the only authorized sanction is contained in D.C.Code [§] 40–1719 [which] provides for a civil fine of $500.00. [Edward] contends this is the most the Panel under current authority could impose."[7] That motion was also denied. As with the earlier denial of reconsideration, there was no reference by the Full Panel to Edward's contention that the agency lacked

statutory authority to impose the sanctions actually imposed. Nor did the agency specify the legal basis for imposing revocations rather than fines. This petition for review followed.

Edward does not challenge the finding that he operated a taxicab without holding a valid taxicab operator license at the time of the incident with the passenger. Instead, he renews his argument that DCTC exceeded its authority when it revoked his public vehicle license and barred him from receiving his taxicab operator license.[8]

## II.

We begin by observing that "DCTC has exclusive authority for intrastate regulation of taxicabs. One of the ways in which it so regulates is to enforce [D.C.Code] § 40–1719, which prohibits hacking without a license." *Onabiyi v. District of Columbia Taxicab Comm'n,* 557 A.2d 1317, 1318 (D.C.1989). It is well settled that DCTC is the "agency charged with enforcing laws prohibiting unlicensed hacking." *Id.* at 1319. In this case, DCTC has exercised its authority by barring Edward from owning or operating a taxicab for a period of five years.

We agree with Edward's contention, however, that "the issue of the authority to revoke his operator's and taxicab owner's license ... [was] left unaddressed" by DCTC. We have repeatedly held that "[a]dministrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." *Hughes v. District of Columbia Dep't of Em-*

---

5. That rule provides that "[n]o person shall drive or be in physical control of a taxicab unless they have in their possession a valid identification card."

6. The panel made no finding concerning the other allegations made by the passenger.

7. The cited statute provides that no person shall operate a taxicab without first procuring all applicable licenses, with any violation being punishable by a fine not to exceed $500. Edward also argued that since he had not been issued a taxicab operator license the Panel could not revoke what he "did not have."

Although we express no view concerning the merits of either of these contentions, each is sufficiently substantial to warrant separate consideration by the agency.

8. Prior to the hearing, appellant passed the written and oral examinations that are required to obtain a taxicab operator license. According to the hearing examiner, the license had been withheld because appellant had $2,025 in unpaid traffic tickets which he was required to satisfactorily resolve before the taxicab operator license would be issued. In addition, issuance of the license was stayed pending resolution of the complaint filed by the passenger.

*ployment Servs.,* 498 A.2d 567, 570 (1985). As we noted above, Edward twice raised the issue of the authority of DCTC to impose the sanctions it imposed.[9] Thus, DCTC "had a full opportunity to consider the matter in making its ruling and to state its reasons for [its] decision." *Webb v. District of Columbia Dep't of Human Servs.,* 618 A.2d 148, 151 (D.C.1992). Having had the opportunity to address an issue critical to a resolution of this matter, it was incumbent upon the agency to do so. *See United States Information Agency v. Federal Labor Relations Auth.,* 295 U.S.App.D.C. 106, 110, 960 F.2d 165, 169 (1992).[10] To hold otherwise would render meaningless the requirement that claims be presented, in the first instance, to the agency. As we recently noted, "[f]ull consideration and reasoned exposition of all issues in a legal interpretation by the agency of its own statute is particularly important because of the marked deference given to such interpretations." *Gay v. Dep't of Employment Servs.,* 644 A.2d 1326, 1328 (D.C.1994). We concluded that it would be "inadvisable ... to attempt to review the issue on this record without a clearer exposition by the agency of its statutory analysis...." *Id.*

For the reasons stated, since we conclude that the DCTC did not set forth the legal basis for the sanctions it imposed, in the face of Edward's specific challenge to its statuto-

ry authority, we remand the case for further proceedings.

*So ordered.*

---

9. D.C.Code § 1–1509(e) (1990) provides that:

Every decision and order adverse to a party to the case, rendered by the Mayor or an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence.

10. In that case, the United States Court of Appeals for the District of Columbia held that "[b]ecause the [agency] did not provide us with its reasoned constructions of [a specified statutory provision] in the challenged order, we have nothing to review, and must therefore remand this action to the [agency]." *United States Information Agency, supra,* 295 U.S.App.D.C. at 110, 960 F.2d at 169 (citing *City of Kansas City v. HUD,* 923 F.2d 188, 189 (D.C.Cir.1991) (remanding an agency decision because "HUD has offered no

reasoned interpretation of [a statutory provision] to which we can defer")).

This court has often applied federal administrative law principles to local administrative agency proceedings. *See, e.g., Bender v. District of Columbia Dep't of Employment Servs.,* 562 A.2d 1205, 1208 (D.C.1989) (applying same "standards of judicial review as those found in the Federal Administrative Procedure Act and ... [that] of the lower federal courts") (citations omitted); *Pendleton v. District of Columbia Bd. of Elections & Ethics,* 449 A.2d 301, 303 (D.C.1982) ("As the DCAPA is modeled on the federal Act to a great extent, particularly with respect to the definition of adjudicatory proceedings, judicial constructions of analogous provision ... are persuasive.") (citation omitted); *Lee v. District of Columbia Bd. of Appeals & Review,* 423 A.2d 210, 215–16 (D.C.1980) (federal court interpretation of federal standing requirements in Federal Administrative Procedure Act provides guidance in interpreting District of Columbia Administrative Procedure Act).